UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID LEE MCCLAIN JR.,

Plaintiff,

v. Case No. 2:24-cv-777-JLB-KCD

K. DULEY,

Defendant.
_______________________________/

**ORDER**

This case stems from Defendant Lieutenant Kevin Duley's alleged failure to protect Plaintiff David L. McLain from an attack by another prisoner at Charlotte Correctional Institution. Duley has moved for summary judgment (Doc. 44) and McClain has filed a response (Doc. 46), making the motion ripe for review. For the reasons below, Duley's motion is **GRANTED**.

## I. Background and Procedural History

McClain initiated this action by filing a pro se civil rights complaint. He generally alleged that Duley failed to protect him from an attack by another prisoner. (Doc. 1.) Duley moved to dismiss the complaint on grounds that the sparse facts alleged did not state a claim on which relief could be granted. (Doc. 23.) In its order denying Duley's motion, the Court summarized the factual allegations as follows:

> [O]n March 8, 2023, Inmate Robinson told Officer Duley that he intended to stab and kill Plaintiff. Officer Duley told Inmate Robinson that he would receive a disciplinary report for making the threat. Later that day, Officer Duley placed Inmate Robinson in Plaintiff's cell. Shortly thereafter, Inmate Robinson started banging on the cell door and told Officer Duley that he would not sleep in a cell with Plaintiff. Officer Duley told Inmate Robinson that he would move him in five minutes and walked away. Another officer approached the cell, and Inmate Robinson told him that he did not want a "bunky." This officer told Inmate Robinson to speak with Officer Duley. Inmate Robinson then swore at the officer and started attacking Plaintiff. The officer used chemical agents to defuse the situation. Plaintiff was later told by other officers that "they bet on me to beat Robinson's ass due to being a troublemaker." Plaintiff alleges that Officer Duley's actions show that he was deliberately indifferent to Plaintiff's safety.

(Doc. 27 at 1–2 (citations to the record omitted, McClain's minor spelling and grammar errors corrected).) The Court denied Duley's motion to dismiss because, "while sparse, when construed in Plaintiff's favor, these allegations state an Eighth Amendment deliberate indifference claim for failure to protect." (*Id.* at 4.)

After conducting discovery, Duley filed this motion for summary judgment. (Doc. 44.) Duley argues that: (1) McClain cannot prove an Eighth Amendment violation; (2) there is no evidence that McClain suffered a physical injury from Robinson's attack; and (3) McClain's claims are barred by qualified immunity. (*Id.*) To support their motion for summary judgment, Duley provides McClain's disciplinary history (Doc. 44-1), McClain's deposition (Doc. 44-2, "McClain Dep."), two incident reports about the officer's use of force

against Robinson (Doc. 44-3), and McClain's March 8, 2023 medical records (Doc. 44-4.)

McClain responded to Duley's motion and generally repeats his argument that Duley failed to take reasonable measures to ensure his safety. (Doc. 46 at 4.) He reasserts that he suffered facial injuries and pain in the lower back from "being slammed by Robinson" and that prior to the incident, he had 20/20 vision but now needs glasses. (*Id.*) Finally, McClain argues that qualified immunity does not shield Duley from liability because it is clearly established that he had a right to be free from an attack by another prisoner. (*Id.*)

## II. Legal Standard (Summary Judgment)

Summary judgment is not a substitute for trial. It is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of identifying the portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When the moving party has the burden

of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But when the opposing party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the nonmoving party does not make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

## III. Discussion

McClain does not allege that Duley was personally involved in the attack that resulted in his injuries. Instead, McClaim attributes liability to Duley based upon his failure to protect him from Robinson after he (Robinson) threatened to harm any future cellmate he was forced to bunk with. Duley argues that he is entitled to summary judgment on any Eighth Amendment failure-to-protect claim because "Plaintiff fails to meet the standard required of him." (Doc. 44.)

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, a prison inmate has a constitutional right to protection

from physical assault by other inmates. *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984). To state a failure-to-protect claim, a plaintiff must plausibly allege: (1) a substantial risk of serious harm; (2) deliberate indifference to that risk; and (3) causation. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

The first element—whether a plaintiff has shown a substantial risk of serious harm—is assessed under an objective standard. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016). In the failure-to-protect context, a plaintiff can make this showing by demonstrating either a general threat to inmates based on dangerous conditions in the prison, or by an individualized risk based on a specific threat to the prisoner. *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019).

To establish the second element—deliberate indifference—a plaintiff must plausibly allege that the defendant: (1) "was subjectively aware that the inmate was at risk of serious harm"; (2) "disregarded that risk"; and (3) "acted with subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).[1] Subjective awareness requires that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

the inference." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007). The determination of whether a risk was disregarded is objective: "[T]he [defendant] must have responded to the known risk in an unreasonable manner." *Marbury*, 936 F.3d at 1233; *Wade*, 106 F.4th at 1262. In other words, a defendant who responded reasonably to a risk, even a known risk, cannot be found liable under the Eighth Amendment. *Wade*, 106 F.4th at 1255.

**A. The material facts are undisputed.**

During his deposition, McClain described the facts surrounding Robinson's placement in his cell. McClain's version of events (as relayed in his complaint and deposition) is largely undisputed and summarized as follows:

On March 8, 2023, McClain was held in a portion of the prison called the "Shower," which was "like the suicidal cell." (McClain Dep., p. 8.) McClain overheard Robinson, who was not in McClain's cell at the time, tell Duley "I don't want no bunkie. If I go in, I'm stab him, going to kill him. I don't want him as my bunkie. I don't want--I'm a known gang." (*Id.* p. 9.) After McClain described this incident in his deposition (*id.* pp. 9–13), Duley's counsel sought to clarify what happened before and after Robinson's placement in McClain's cell. The following exchange occurred:

> Q. So I kind of just want to go back a little bit to prior to the incident. Just so I'm making sure that I'm understanding what you're telling me. . . . So you're in the Shower prior to this incident. That's when you hear—oh, sorry. Robinson's in the

Shower. You're in the cell and that's when you hear the threats coming from Robinson?

A. Yes, ma'am. Everybody heard it over. Like, it's like the (indiscernible) is small. It's only 28 cells in (indiscernible) is real small. It's four Showers. It's real small. Like, like at shower night like when it's time to take showers. That's how everybody talk to everybody. Like it's real small. Like you everything. It's real small.

Q. It's like an open kind of area where you can kind of hear everything?

A. Yes, ma'am. From the shower, yes, ma'am.

Q. And he was saying this to Duley or kind of just he was making these threats out in the open for everyone to hear in that sense?

A. Lt. Duley, Lt. Duley was at the shower. So he was like, man, you put me in 20—you, you put me in 2104. I'm going to stab him and kill him. That's when Lt. Duley told him verbatim. He said, "I'm going to write you a DR for spoken threats." And that's when he kept saying, and he walked off. Lt. Duley he disappeared, he left. That's when I fall asleep. That's like an hour later. That's when they, everybody, waking me up. That's when he was coming to my cell.

Q. So Robinson was in the shower for, I guess, like an hour, or whatever that time frame was, from him making the threats to --

A. Yes ,ma'am.

Q. -- being put in a cell?

A. Yes, ma'am. Correct.

Q. Then he's at the cell with you, and he's saying again that he's going to kill you and stab you?

A. No, ma'am. He only said that in the shower. When he came to my cell, he didn't — he was just trying to tell them, I don't want to be in room—I don't want to be in the room. He only said that when he saw him. When he like—when he was—I guess, like

when he was like—like, coming to the cell, he didn't say none of that. He only said in the shower, but he was telling, I don't want to be in the room with him—I don't want to be in the room with him.

Q. And he's saying that to Duley with you present?

A. Yes, ma'am. I was already—I was already in the cell.

Q. And then that's when Duley says, I'll move you in five minutes, and then puts him in the cell with you?

A. No, ma'am. They put him in the cell. They secure him in the cell with me. Lt. Duley leaves, but he was kicking—he was kicking and banging on the door. That's when Lt. Duley came, and he was like, man, he came back because he kicked real loud. Like the doors—Like, you just kick the door. Like, you can just—like the doors—like you—like you—you got to be kicking hard, it's still going to be loud. And they can hear it from the Lt. office. They can hear it from the bubble, from the office station from the bubble.

So that's why he came to the door—when he was kicking, he came to the door, like, man, like, what's up? I don't want to be in the room with him—I don't want me to room with him. That's when he was like, man, I'll move you in five minutes. He like, five minutes—five minutes is way too long. And that's when officer also came with (indiscernible), he told other officer (indiscernible).

Q. And Robinson said to Duley, five minutes is too long or he said that to the other officer?

A. No, he said it to Lt. Duley.

(*Id.* pp. 18–21.)

So after Duley told Robinson he would move him in five minutes, another officer (Officer Doe) came to the cell. (*Id.* p. 12.) When Officer Doe told Robinson that he would have to talk to Duley about being moved sooner than five

minutes, Robinson attacked McClain. (*Id.*) Officer Doe immediately used a chemical agent to diffuse the situation. (*Id.* p. 13.) Duley escorted both inmates to the shower and to be examined by medical. (*Id.*) When he returned to the Showers, Officer Walter told McClain, "man, we betting on you to beat his ass." (*Id.*)[2]

**B. Duley is entitled to summary judgment.**

Duley argues that McClain has not satisfied the first element of a failure-to-protect claim by plausibly alleging a substantial risk of serious harm. He points out that "threats between inmates are common" and therefore "do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." (Doc. 44 at 9 (quoting *Marbury*, 936 F.2d at 1237).)

While the Court agrees with Duley that "[t]he objective component of an Eighth Amendment claim is … contextual," *Jordan v.* Doe, 38 F.3d 1559, 1564 (11th Cir. 1994), the undisputed facts here show that Robinson told Duley that he did not want a "bunkie," and that he would harm his cellmate if forced to cohabit a cell. Thus, when assessed under an objective standard, a reasonable jury could find that the undisputed facts demonstrate a specific threat from

---

[2] McClain clarified that Duley was not the officer who suggested that officers bet on the prisoners, (McClain Dep., p. 14), and there is no evidence that Duley was involved in any bet. Given that Officer Doe immediately shut down the attack, it does not appear (and McClain does not allege) that there was a widespread conspiracy to move Robinson to McClain's cell.

Robinson that "posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233.

The second failure-to-protect element—deliberate indifference to the substantial risk—is more problematic for McClain for two reasons. First, the facts do not suggest that Duley was subjectively aware that McClain was at risk of serious harm. After Robinson threatened his unnamed future cellmate, Duley warned Robinson that he could receive a disciplinary report for the verbal threats, and McClain does not allege that the threats continued thereafter.[3,4] In fact, McClain fell asleep during the hour that passed between Robinson's initial threats and his placement in McClain's cell. And even though McClain heard Robinson's earlier threats, when Duley brought Robinson to his cell, McClain did not express concerns about his safety—not because McClain was afraid of doing so—but because Duley was "very playful" and "goofy," suggesting that McClain thought Duley had not taken Robinson's threats seriously. (McClain Dep. pp. 12, 17–18.) And, while not admirable, it is well established that "an official's failure to alleviate a significant risk that he

[3] McClain argues that the threat of a disciplinary report was meaningless because Duley "knows inmates cannot received disciplinary reports for spoke threats amongst each other." (Doc. 46 at 3.) Whether Robinson actually received (or was subject to) a disciplinary report is immaterial. It is undisputed that Duley attempted to control Robinson's behavior by explaining that he could face consequences for making threats.

[4] McClain explained that the Shower area was "real small" and that you could "kind of hear everything." (McClain Dep. p. 18.)

should have perceived but did not … cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Next, a prison official is not deliberately indifferent to a substantial risk to inmate safety if he responds reasonably to the risk, even if an inmate is ultimately harmed. *See Wade*, 106 F.4th at 1253. And the undisputed facts before the Court show that Duley's responses to Robinson's threats were objectively reasonably. Duley first warned Robinson that he could receive a disciplinary report for making verbal threats, and the threats stopped. Then, when Robinson began kicking the cell door after his placement with McClain—over an hour later—Duley returned to the cell and asked Robinson what was going on. When Robinson reiterated that he did not want to be in the cell with McClain, Duley said that he would move him in five minutes. After Robinson told Duley that five minutes was "too long," Duley left the area, but he did not leave McClain alone with Robinson; Officer Doe was present. And when Robinson attacked McClain and did not respond to Officer Doe's order to "cease his disorderly actions" (Doc. 44-3 at 4), Officer Doe acted immediately to quell Robinson's attack by spraying him with chemical agents.

It was not objectively unreasonable for Duley to caution Robinson against making threats; move Robinson to McClain's cell only after an hour had passed without further threats; and after Robinson escalated his behavior, tell him that he would remove him from McClain's cell in five minutes. Further,

while Duley was unable to remove Robinson from the cell in time to prevent him from striking McClain, Officer Doe was present and responded immediately to stop the attack.

Taking all of McClain's allegations as true and construing them in the light most favorable to him, the Court concludes that a reasonable jury could not find Duley's actions and inactions to be deliberately indifferent. At most, his failure to prevent Robinson's attack amounted to negligence. And neither negligence nor gross negligence constitute deliberate indifference. *Farmer*, 511 U.S. at 835–36, n. 4.

## IV. Conclusion

The undisputed material facts do not show that Duley was subjectively aware of the risk Robinson posed to McClain or that he responded unreasonably to Robinson's threats. As a result, there is no genuine issue of material fact as to whether Duley acted with deliberate indifference to McClain's safety needs, and he is entitled to judgment as a matter of law on this claim. *See Celotex Corp.*, 477 U.S. at 323.

Defendant Duley's motion for summary judgment is granted.[5] With no other claims or defendants, this case will be closed.

Accordingly, it is **ORDERED**:

---

[5] Because Duley is entitled to summary judgment on other grounds, the Court will not address arguments that he is entitled to qualified immunity.

1. Defendant Duley's motion for summary judgment (Doc. 44) is **GRANTED**.

3. The **Clerk** is **DIRECTED** to enter judgment for Duley and **CLOSE** this case.

**ENTERED** in Fort Myers, Florida on September 21, 2026.

Kyle C. Dudek
United States District Judge